## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
### Case No.: _____

| | |
|---|---|
| Barbara L. Bjornson, *on behalf of herself and all others similarly situated*,<br><br>            Plaintiff,<br><br>    vs.<br><br>Bank of America, N.A., Patrick K. Willis Company, Inc. d/b/a American Recovery Service, and AWR Enterprises Inc.,<br><br>            Defendants. | **CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

1.     Plaintiff Barbara L. Bjornson brings this consumer class action alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"); Article 9 of the Minnesota Uniform Commercial Code, Minn. Stat. § 336.9-101, *et. seq*. ("UCC"); and Minnesota Common Law.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction under 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1367.  Venue in this Judicial District is proper under 28 U.S.C. § 1391(b) because: Plaintiff resides in this Judicial District; Defendants transact substantial business in this Judicial District; and the events or conduct giving rise to the claims occurred in this Judicial District.

## PARTIES

3.    Plaintiff is a natural person, and citizen of the State of Minnesota.

4.    Defendant Bank of America, N.A. ("BANA") is a national banking association formed under the laws of the United States. BANA's main office, as designated in its articles of association, is located in the City of Charlotte, County of Mecklenburg, and State of North Carolina. Specifically, BANA's main offices are located at 100 N. Tryon St., Charlotte, NC 28202. CT Corporation System, Inc. is the registered agent authorized to accept service on behalf of BANA at 818 West Seventh Street, Suite 930, Los Angeles, CA 90017.

5.    Defendant Patrick K. Willis Company, Inc. *d/b/a* American Recovery Service ("American Recovery") is a California corporation with its principal place of business located at 3401 Fitzgerald Rd., Rancho Cordova, CA, 95742. Joel Levy is the registered agent authorized to accept service at 2150 River Plaza Drive, Suite 450, Sacramento, CA 95833.

6.    American Recovery is licensed as a Repossession Agency in California, license number 717.

7.    Every two minutes American Recovery repossesses a vehicle.

8.    American Recovery has repossessed 470,000 units through License Plate Recognition ("LPR") technology.

9.    American Recovery is the most trusted asset recovery management solution on the market.

10.     American Recovery is the Original Nationwide Repossession Service and contracts with nearly 800 recovery agents across the nation.

11.     American Recovery offers repossession management services to financial institutions across the nation – *also known as repossession "forwarding"*.

12.     American Recovery is engaged in a business, the principal purpose of which is the enforcement of security interests.

13.     American Recovery regularly enforces or attempts to enforce security interests for other parties.

14.     Defendant AWR Enterprises Inc. ("AWR") is a Minnesota corporation with both its registered office and principal executive office located at 11821 63rd Street NE, Albertville, MN 55301.  JoAnne Pletcher is identified as the Chief Executive Officer for AWR.  Upon information and belief, Shawn Pletcher is the owner and operator of AWR.

15.     AWR is a repossession company.

16.     AWR repossesses automobiles, cars, RV's, ATVs, motorcycles, other vehicles, and other property.

17.     AWR's mission is to provide a great team in collaboration with a lender to achieve the most effective and efficient way of reaching a collective goal in recovering collateral.

18.     AWR secures collateral from persons who may not wish to voluntarily surrender such collateral.

19.     AWR is a Certified Asset Recovery Specialist.

20.     AWR is engaged in a business, the principal purpose of which is the enforcement of security interests.

21.     AWR regularly enforces or attempts to enforce security interests for other parties.

22.     American Recovery and AWR regularly use the mail, roads, and telephone in connection with the enforcement of security interests by operating tow truck vehicles, transporting repossessed vehicles, engaging in telephone conversations with consumers and creditors, and mailing correspondence, invoices, statements, and notices.

23.     Federal court records indicate that American Recovery and AWR have been sued on multiple occasions under the FDCPA.

24.     For purposes of 15 U.S.C. § 1692f(6), American Recovery and AWR are "debt collectors" as defined in the FDCPA.  *See* 15 U.S.C. § 1692a(6).

## NATURE OF THE ACTION

**MINNESOTA LAW - THE "*COBB*" NOTICE**

25.     When a secured party has repeatedly accepted late and/or partial payments from the debtor over the course of a loan, the secured party must notify the debtor that strict compliance with the contract terms will be required before the secured party can lawfully repossess the collateral.  *See Cobb v. Midwest Recovery Bureau Co.*, 295 N.W.2d 232, 236–37 (Minn. 1980).

26.     The secured party must notify the debtor that strict compliance with the time for payment will be required in the future.  *See Cobb*, 295 N.W.2d at 236 (citing cases).

27.    The secured party must notify the debtor that late payments will no longer be accepted. *See Cobb*, 295 N.W.2d at 237.

28.    The notice which a secured party is required to send to a consumer is referred to as a "*Cobb* notice." *See Buzzell v. Citizens Auto. Finance, Inc.*, 802 F. Supp. 2d 1014, 1021 (D. Minn. 2011).

29.    In addition to the notification of strict compliance, the *Cobb* notice must include: (a) the amount past due; (b) the deadline to pay the due balance; and (c) the consequences for failure to comply. *See Akerlund v. TCF Nat'l Bank of Minnesota*, No. 0:99-cv-01537 (MJD/JGL), 2001 WL 1631440, at *5 (D. Minn. 2001) (citing *McNeill v. Dakota County State Bank*, 522 N.W.2d 381, 384-85 (Minn. App. 1994)).

30.    The *Cobb* notice must be in writing. *See Buzzell*, 802 F. Supp. 2d at 1021 n.7 (*Cobb* cases "contemplate notice being given in the form of a letter."); *see also Hendrickson v. Fifth Third Bank*, No. 0:18-cv-00086 (WMW/TNL), 2019 WL 652417, at *2 (D. Minn. Feb. 15, 2019) (describing the *Cobb* requirement as "written notice").

31.    If a creditor sends a *Cobb* notice and then subsequently accepts late payments, an additional *Cobb* notice is required. *Buzzell*, 802 F. Supp. 2d at 1024 (citing *Cobb*, 295 N.W.2d at 237), accord *McNeill*, 522 N.W.2d at 384.

32.    Where a secured party has repeatedly accepted late and partial payments from the debtor over the course of a loan and has failed to send the requisite *Cobb* notice, repossession is wrongful as a matter of law. *See Buzzell*, 802 F. Supp. 2d at 1024.

33.     At all times relevant to this Complaint, BANA did not have any polices or procedures in place of providing Minnesota consumers with the proper and requisite strict compliance notice (i.e., *Cobb* notice) under Minnesota law.

34.     At all times relevant to this Complaint, BANA failed to provide Minnesota consumers with the proper and requisite *Cobb* notice prior to repossessing said consumers' vehicles.

## FACTUAL ALLEGATIONS
### (Experience of the Representative Plaintiff)

**THE SECURITY AGREEMENT**

35.     In August 2015, Plaintiff purchased a 2015 Forest River Shasta Oasis (the "Vehicle").

36.     The Vehicle was a "consumer good" under Minn. Stat. § 336.9-102(a)(23) because Plaintiff bought and used the Vehicle for personal, family, or household purposes.

37.     In connection with purchasing the Vehicle, Plaintiff entered into a retail installment contract (the "Agreement").

38.     The Agreement was contemporaneously assigned to BANA.

39.     Under the terms of the Agreement: (a) Plaintiff obtained a loan from BANA to finance the purchase of the Vehicle; (b) Plaintiff granted BANA a security interest in the Vehicle to secure repayment of the loan BANA issued to Plaintiff; (c) Plaintiff was required to make 120 monthly installment payments in the amount of $111.06; (d) the principal amount of the obligation was $10,093.09; and (e) the credit service charge was $3,234.11.

40.     The Agreement was a "security agreement" under Minn. Stat. § 336.9-102(a)(74) because it provided for a security interest to BANA.  Therefore, BANA was a "secured party" as defined under Minn. Stat. § 336.9-102(a)(73).

41.     Because Plaintiff's obligations under the Agreement were incurred for personal, family, or household purposes: (a) Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and/or a person affected by a violation of the FDCPA; (b) Plaintiff was a "consumer debtor" as that term is defined by Minn. Stat. § 336.9-102(a)(22); (c) the Agreement was a "consumer goods transaction" under Minn. Stat. § 336.9-102(a)(24); and (d) Plaintiff's obligation under the Agreement was a "debt" as defined by 15 U.S.C. § 1692a(5).

**REPEATED ACCEPTANCE OF LATE PAYMENTS**

42.     As early as September 2016, Plaintiff began to repeatedly fall behind on her monthly payments under the Agreement.

43.     Throughout the course of the Agreement Plaintiff made numerous, late, partial, and/or irregular payments to BANA.

44.     BANA always accepted Plaintiff's late payments.

45.     BANA never rejected any late payments from Plaintiff.

46.     BANA never returned any late payments to Plaintiff.

47.     After accepting the late payments from Plaintiff, BANA failed to send Plaintiff: (a) a *Cobb* notice; (b) a notice that strict compliance with the original terms of the Agreement would be required in the future; (c) a notice that late payments would no

longer be accepted in the future; or (d) a notice warning Plaintiff that the Vehicle may be repossessed.

48.     Plaintiff never received: (a) a *Cobb* notice; (b) a notice that strict compliance with the original terms of the Agreement would be required in the future; (c) a notice that late payments would no longer be accepted in the future; or (d) a notice warning Plaintiff that the Vehicle may be repossessed.

49.     Throughout the course of the Agreement BANA sent Plaintiff several late notices, many of which varied in language (collectively, "late notices").

50.     The late notices were not *Cobb* notices.

51.     The late notices did not mention: (a) that strict compliance with the original terms of the Agreement would be required in the future; (b) that late payments would no longer be accepted in the future; or (c) that the Vehicle may be repossessed.

52.     The late notices informed Plaintiff that BANA would continue to accept additional late payments.

53.     Some late notices did not contain a deadline for payment.

54.     Some late notices informed Plaintiff that she needed to make a payment within ten days.

55.     Plaintiff made late payments beyond the ten-day deadline.

56.     BANA always accepted late payments after sending a late notice to Plaintiff.

57.     On February 13, 2020, Plaintiff made a late payment to BANA which BANA accepted.

58.     Throughout the Agreement BANA allowed Plaintiff to fall behind on the monthly payments and remain behind without requiring strict compliance with the terms of the Agreement.

59.     BANA never insisted upon strict compliance with the payment due date.

60.     BANA was required to send Plaintiff a *Cobb* notice after the acceptance of every single late payment.  *See Cobb*, 295 N.W.2d at 237; *Buzzell*, 802 F. Supp. 2d at 1022; *McNeill*, 522 N.W.2d at 384.

61.     BANA failed to send Plaintiff any *Cobb* notice, let alone a *Cobb* notice after its acceptance of each Late Payment from Plaintiff.

**DEFENDANTS' UNLAWFUL REPOSSESSION**

62.     Sometime prior to February 17, 2020, BANA hired, engaged, or sought the assistance of American Recovery to acquire Plaintiff's Vehicle through repossession.

63.     Thereafter, American Recovery hired, engaged, or sought the assistance of AWR to perform the actual repossession on behalf American Recovery and/or BANA.

64.     On or around February 17, 2020, BANA, American Recovery, or AWR informed the police that it would be repossessing Plaintiff's Vehicle and that Defendants were lawfully able to possess Plaintiff's Vehicle.

65.     On or around February 17, 2020, AWR repossessed Plaintiff's Vehicle at the request of American Recovery and/or BANA.

66.     On or around February 17, 2020, AWR repossessed Plaintiff's Vehicle on behalf of American Recovery and/or BANA.

67.    On February 17, 2020, Plaintiff contacted the police, who informed Plaintiff that the Vehicle had been repossessed.

68.    After the repossession, Plaintiff contacted Defendants regarding the details of the repossession, amounts due, and how to get the Vehicle back.  BANA provided Plaintiff with the phone number to American Recovery.  Likewise, American Recovery directed Plaintiff to AWR.

69.    Defendants refused to release the Vehicle.

70.    Plaintiff informed BANA that the repossession of her Vehicle was wrongful and illegal, and demanded that BANA release the Vehicle.

71.    BANA refused to release the Vehicle.

72.    Plaintiff was shocked and surprised by Defendants' conduct because BANA had always accepted late payments from Plaintiff.

73.    Since 2016, Plaintiff regularly made Late Payments to BANA, which BANA always accepted.

74.    BANA accepted late payments from Plaintiff even though Plaintiff was multiple months past due.

75.    In February 2020, BANA knew that: (a) it had repeatedly accepted late payments from Plaintiff; (b) it had not sent Plaintiff a *Cobb* notice after accepting her late payments; and (c) that it was required to send Plaintiff a *Cobb* notice prior to repossessing the Vehicle.

76.    Defendants illegally and wrongfully repossessed Plaintiff's Vehicle.

77.    BANA never returned Plaintiff's late payments.

78.    BANA sold the Vehicle and retained most of the profits.  BANA only returned the surplus profits to Plaintiff.

79.    At all times, American Recovery was acting as an agent for BANA, acting on BANA's behalf, and acting at BANA's request and instruction.

80.    American Recovery represented to Plaintiff and to third parties that it was acting on behalf of BANA.

81.    At all times, AWR was acting as an agent for BANA and/or American Recovery, acting on behalf of BANA and/or American Recovery, and acting at the request and instruction of BANA and/or American Recovery.

82.    AWR represented to Plaintiff and to third parties that it was acting on behalf of BANA and American Recovery.

83.    BANA knew or reasonably should have known that American Recovery and AWR had been sued in the past for wrongful repossession and violations of the FDCPA.

84.    Defendants' actions were ratified and/or authorized because: (a) any Defendant could have released the Vehicle; (b) Defendants refused to release the Vehicle; (c) Defendants refused to return the Vehicle to Plaintiff without the payment of money; (d) BANA accepted Plaintiff's late payments, including the last late payment; (e) BANA accepted and retained the Vehicle from AWR and American Recovery after repossession; (f) American Recovery accepted and retained the Vehicle from AWR after repossession; (g) BANA and American Recovery worked together to auction and sell the Vehicle; (h) BANA sold the Vehicle and retained the profits; and (i) any Defendant could have

prevented the repossession by performing even a cursory review of the data, as opposed to simply relying on inaccurate electronic data.

**DAMAGE, HARM, AND INJURIES**

85.    Plaintiff has suffered actual damages, tangible injuries, and intangible injuries as a result of Defendants' unlawful and wrongful repossession.

86.    Since the repossession BANA has been reporting the repossession to credit reporting agencies (commonly referred to as "credit bureaus").

87.    Vehicle repossessions are considered derogatory marks on a consumer's credit file and can have serious negative impacts on consumer's credit score. *See* Experian, *How Does Repossession Work?*, https://www.experian.com/blogs/ask-experian/how-does-repossession-work/ (Feb. 7, 2021, 3:30 pm).  In fact, "on its own a repossession can cause your [credit] score to *plummet*".  *Id* (emphasis added).

88.    "An auto repossession can negatively affect your credit in numerous ways. It also can be costly and disruptive—with effects that may linger for years to come." *See* Experian, *How Does a Repossession Affect Your Credit?*, https://www.experian.com/blogs/ask-experian/how-does-a-repossession-affect-your-credit/ (Feb. 7, 2021, 3:40 pm). "Damage to your credit can make it more difficult for you to secure loans and credit going forward." *Id.*

89.    BANA's report of the wrongful repossession on Plaintiff's credit report negatively impacted Plaintiff's credit score.  As a result of the credit report, BANA impeded Plaintiff's ability to obtain lower-cost credit, to obtain other loans, to find a job, and to find housing.

90.    Defendants stole and converted Plaintiff's property.

91.    Defendants' conduct interfered with, interrupted, invaded, and deprived Plaintiff of the use, possession, and enjoyment of her personal property, specifically the Vehicle.

92.    All of Plaintiff's above-referenced injuries—both tangible and intangible— are actual, concrete injuries that are widely recognized by the United States Supreme Court, United States Court of Appeals for the Eighth Circuit, and the United States District Court for the District of Minnesota.

## CLASS ACTION ALLEGATIONS

93.    Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated, and seeks to certify the following Classes:

a.  Cobb Class:

*All Minnesota consumers whose vehicles were repossessed by or on behalf of BANA, within four (4) years of the filing of the original Complaint, and who made two or more late or partial payments on their vehicle(s) that were accepted by BANA, and who, thereafter, were not sent a strict compliance/Cobb notice prior to the repossession of their vehicle.*

b.  American Recovery Class:

*All members of the Cobb Class whose vehicles were repossessed by or on behalf of American Recovery, within four (4) years of the filing of the original Complaint, and who made two or more late or partial payments on their vehicle(s) that were accepted by BANA, and who, thereafter, were not sent a strict compliance/Cobb notice prior to the repossession of their vehicle.*

c.  AWR Class:

*All members of the Cobb Class whose vehicles were repossessed by or on behalf of AWR, within four (4) years of the filing of the original Complaint, and who made two or more late or partial payments on their vehicle(s) that were accepted by*

*BANA, and who, thereafter, were not sent a strict compliance/Cobb notice prior to the repossession of their vehicle.*

d. FDCPA Class

*All members of the American Recovery Class and AWR Class whose vehicles were repossessed within one (1) year of the filing of the original Complaint, and who made two or more late or partial payments on their vehicle(s) that were accepted by BANA, and who, thereafter, were not sent a strict compliance/Cobb notice prior to the repossession of their vehicle.*

94.     The Cobb Class, American Recovery Class, AWR Class, and FDCPA Class (collectively the "Classes" or "Class") shall be subject to the following exclusions, who are not members of the Classes, notwithstanding eligibility according to the above criteria: all (1) Counsel for Plaintiff and the Classes; (2) Counsel for Defendants; (3) the assigned Judge, Magistrate Judge, and their clerks and staff;  and (4) Minnesota consumers whose account balances with BANA were discharged in bankruptcy prior to the repossession.

95.     During the class time-periods alleged herein, BANA did not have a policy and procedure in place of sending proper legal notices to Plaintiff and the putative Classes. Based upon established policy and practice, BANA regularly repossessed the vehicles belonging to Plaintiff and the Classes without sending proper legal notice.

96.     As a result of Defendants' failure to comply with Minnesota law, BANA did not have a present right to possess the property belonging to Plaintiff and the Classes in violation of Minn. Stat. § 336.9-609.

97.     During the class time-period alleged herein, American Recovery and AWR, on behalf of BANA, regularly repossessed vehicles belonging to Plaintiff and the Classes.

98.    During the class time-period alleged herein, American Recovery and AWR did not have a policy and procedure in place to verify that, before it engaged in repossession activity, BANA had sent the proper legal notices to the Plaintiff and the Classes.

99.    As a result of Defendants' failure to comply with Minnesota law, American Recovery and AWR did not have a present right to possess the property belonging to Plaintiff and the Classes in violation of 15 U.S.C. § 1692f(6).

100.    This action has been brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure because the Classes satisfy the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements under Fed. R. Civ. P. 23(a) and (b) for class certification.

**Rule 23(a)(1) - Numerosity**

101.    BANA is one of the world's leading financial institutions, serving individual consumers and businesses with a full range of banking, and other financial products and services.

102.    BANA offers auto loans in all 50 states and works with thousands of automobile dealerships across the country.

103.    BANA has a vehicle lending portfolio of approximately $51 billion.

104.    BANA provides financing to a large number of Minnesota consumers to purchase vehicles.  Of these Minnesota consumers, many have fallen behind on their monthly automobile loan payments, and make late, partial, or irregular payments to BANA. BANA repeatedly accepted such late, partial, and irregular payments, and Minnesota

consumers never received a legally sufficient notice prior to the repossessions described herein.

105.   There are only a limited number of national repossession entities, and even fewer number of local repossession entities.  In addition, BANA only works with certain repossession vendors that must be authorized and approved by BANA.  Defendants are authorized and approved vendors for BANA.

106.   BANA entered into a contractual relationship with American Recovery wherein American Recovery, on behalf of BANA, was to locate and repossess vehicles belonging to Plaintiff and the class members.  In exchange, BANA was to pay American Recovery for the services it provided to BANA.  As part of its contract, American Recovery was allowed to "forward" the repossession order to a local repossession agent such as AWR.

107.   AWR entered into a contractual relationship with BANA and/or American Recovery, wherein AWR, on behalf of BANA and/or American Recovery, was to locate and repossess the vehicles belonging to Plaintiff and the class members.  In exchange, BANA and/or American Recovery was to pay AWR for the services it provided to BANA and/or American Recovery.

108.   Upon information and belief, the contractual arrangements between Defendants are general service contracts pertaining to repossession activities on a continuous or on-going basis.  The contracts between Defendants pertain to a volume of repossessions and not any one individual class member.

109.    Pursuant to the on-going services contract, Defendants communicate with each other and assign individual repossession assignments electronically through software services such as the Recovery Database Network.  Defendants provide repossession assignments to each other on a large volume scale pursuant to such on-going services contracts.

110.    American Recovery boasts over 250,000 repossessions each year.

111.    AWR provides repossession services in Minnesota, North Dakota, South Dakota, Wisconsin, Iowa, and Texas.

112.    The exact number of the class members is unknown at this time, but upon information and reasonable belief, the estimated number is in excess of 100 consumers.  Thus, it is plausible that BANA failed to send *Cobb* notices to such a large number of consumers that joinder of all in this lawsuit would be impracticable.  Likewise, it is plausible that American Recovery and AWR repossessed such consumers' vehicles that joinder of all in this lawsuit would be impracticable.

113.    The exact number of class members as well as the identities of all class members are readily ascertainable through appropriate discovery, including but not limited to the business records of Defendants and the online accounts from Defendants' website or internal software.

**Rule 23(a)(2) - Commonality**

114.     Common questions of law and fact that exist as to Classes.  These common legal and factual questions include:

a. Whether BANA repossessed the class members' vehicles without a present right to possess such vehicles;

b. Whether BANA repossessed the class members' vehicles without sending the requisite *Cobb* notice after accepting Late Payments from the class members; and

c. Whether American Recovery and AWR repossessed the class members' property when American Recovery and AWR had no present right to possession of the property which they claimed as collateral through an enforceable security interest.

115. The common evidence that will drive resolution of the claims for the Classes is a list of Minnesota consumers: (a) who have made late, partial, and irregular payments to BANA over the course of their loan; (b) which were accepted by BANA; (c) who were never sent a legally sufficient *Cobb* notice from BANA after making the late payment; and (d) who subsequently experienced a repossession or attempted repossession of their vehicle.

**Rule 23(a)(3) - Typicality**

116. Plaintiff's claims are typical of the claims of all the other members of the Classes because Plaintiff has the same claims to statutory relief and has suffered the same injuries as all other class members. Likewise, Plaintiff's claims are based on the same legal theories as the claims of all the other members of the Classes.

117. The claims of Plaintiff and the Classes originate from the same conduct, practice, and procedure on the part of Defendants. Thus, the claims of each class member require proof of the same operative facts. Any defenses that Defendants may have to liability or quantum of damages with respect to Plaintiff's claims would be generally applicable to all members of the Classes.

**Rule 23(a)(4) - Adequacy**

118.    Plaintiff brings this lawsuit after an extensive investigation of Defendants' alleged misconduct, with the intention to stop Defendants' unlawful practices, and to recover the same relief for all consumers affected.

119.    Because Plaintiff has no interest adverse to or in conflict with the interests of the Classes, Plaintiff will fairly and adequately protect the interests of all class members.

120.    Plaintiff's counsel, Adam R. Strauss, practices exclusively in consumer protection with an emphasis on litigation concerning the FDCPA and wrongful repossession matters under the Minnesota UCC. Plaintiff's counsel has been certified as class counsel in wrongful repossession class actions in the District of Minnesota, all of which sought to enforce Minnesota consumers' rights under *Cobb* and the Minnesota UCC.

121.    Neither Plaintiff nor her counsel have any interest which might cause them to not vigorously pursue the instant class action lawsuit. Plaintiff and her counsel are committed to expending the time, energy, and resources necessary to successfully prosecute this action on behalf of the Classes.

**Rule 23(b) – Predominance/Superiority**

122.    A class action is appropriate because  questions of law and fact common to Plaintiff and the Classes substantially predominate over questions that may affect individual class members. Because all members of the Classes had their rights violated in

the same manner by the same actions of Defendants, the answer to these common questions will advance the adjudication or resolution of the litigation as to all class members.

123.    A class action is superior to all other available methods for the fair and efficient adjudication of the controversies raised in this Complaint because the costs to pursue individual claims would likely exceed what any one class member has at stake. Thus, members of the Classes have little interest in controlling separate actions when considering the cost, risk, delay, and uncertainty of recovery in prosecuting these claims.

124.    The concentration of litigation of these claims in one forum will permit a large number of similarly situated persons to prosecute their common claims efficiently, without unnecessary duplication of effort and expense that individual actions would engender, and therefore, promote judicial economy.

125.    Statutory relief under the FDCPA and the Minnesota UCC follows from evidence that Defendants repossessed the vehicles after accepting late payments from class members as opposed to providing class members with a proper *Cobb* notice required under Minnesota law—not the subjective or individual experience of any class member.

126.    Whether Defendants violated the law can be determined by examination of Defendants' policies and conduct, as well as a ministerial inspection of Defendants' business records.

127.    Upon information and belief, few members of the Classes are aware that Defendants' actions were unlawful. Thus, the class notice mechanism provides an opportunity for uninformed members of the Classes to learn about their rights and obtain relief where they otherwise would not have.

128.    Plaintiff and her counsel are not aware of any other pending actions against Defendants related to their regular practice of unlawful repossessions and/or attempted repossessions.

129.    A class action is appropriate because the prosecution of separate actions for individual class members creates a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for the parties engaged in the provision of enforcing security agreements.  Likewise, the prosecution of separate actions by individual class members would, as a practical matter, be dispositive of the interests of other members who are not parties to the action or could substantially impair or impede their ability to protect their interests.

## COUNT I
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (Defendants American Recovery and AWR)

130.    Plaintiff restates and re-alleges the preceding allegations of this Complaint.

131.    Plaintiff brings Count I as a Class Action on behalf of herself and the FDCPA Class.

132.    American Recovery and AWR used unfair or unconscionable means to enforce a security interest against Plaintiff and the FDCPA Class by taking or threatening to take certain nonjudicial action to effect dispossession of the property belonging to Plaintiff and the FDCPA Class when American Recovery and AWR had no present right to possession of the property, which they claimed as collateral through an enforceable security interest.

133.    Specifically, American Recovery and AWR engaged in a self-help repossession of vehicles belonging to Plaintiff and the FDCPA Class without the present legal right to possess and/or take the vehicles belonging to class members.

134.    American Recovery and AWR did not have the legal right to possess the vehicles because BANA failed to send Plaintiff and the FDCPA Class the proper *Cobb* notice after BANA had repeatedly accepted Late Payments from such class members.

135.    American Recovery's and AWR's conduct violated 15 U.S.C. § 1692f(6).

136.    As a result of these FDCPA violations, Plaintiff and the FDCPA Class are entitled to actual damages, statutory damages up to $1,000.00, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(1)-(3).

**COUNT II**
**VIOLATIONS OF MINN. STAT. § 336.9-609**
**UNLAWFUL REPOSSESSION**
**(All Defendants)**

137.    Plaintiff restates and re-alleges the preceding allegations of this Complaint.

138.    Plaintiff brings Count II as a Class Action on behalf of herself, the Cobb Class, the American Recovery Class, and the AWR Class (collectively the "Cobb Classes").

139.    At all relevant times, BANA failed to send Plaintiff and the Cobb Classes the proper *Cobb* notice after BANA had repeatedly accepted late, partial, untimely, and irregular payments from Plaintiff and the Cobb Classes.

140.    As a result, Defendants had no present right to possess the vehicles belonging to the Plaintiff and the Cobb Classes.

141.    Therefore, Defendants' self-help repossession of the vehicles belonging to the Plaintiff and the Cobb Classes was conducted without compliance with Minnesota law (*i.e., in violation of Minn. Stat. § 336.9-609*).

142.    As a result of Defendants' violations of Minn. Stat. § 336.9-609, Plaintiff and the Cobb Classes are entitled to actual damages, and statutory damages in the amount of the credit service charge under the agreement plus ten percent (10%) of the principal amount of the obligation under the loan agreement.

**COUNT III**
**CONVERSION**
**(All Defendants)**

143.    Plaintiff restates and re-alleges the preceding allegations of this Complaint.

144.    Plaintiff brings Count III as a Class Action on behalf of herself and the Cobb Classes.

145.    At all relevant times, Plaintiff and the Cobb Classes were entitled to the exclusive use, possession, and enjoyment of their vehicles.

146.    At the time of repossession, Defendants did not have the right to use, take possession of, or move the vehicles belonging to the Plaintiff and the Cobb Classes.

147.    By unlawfully repossessing the vehicles belonging to the Plaintiff and the Cobb Classes, Defendants:

    a.    Intentionally deprived, invaded, and interfered with the use, possession, and enjoyment of property belonging to Plaintiff and the Cobb Classes, without a claim of right;

    b.    Took control and possession of vehicles belonging to the Plaintiff and the Cobb Classes without their consent;

    c.   Deprived Plaintiff and the Cobb Classes of the use of their vehicles; and

    d.   Substantially intermeddled with property belonging to the Plaintiff and the Cobb Classes, without a claim of right.

148.   Defendants converted property belonging to Plaintiff and the Cobb Classes for their own use and benefit by unlawfully repossessing their vehicles.

149.   Defendants' conduct was done intentionally, unreasonably and without justification.

150.   As a direct and proximate result of Defendants' conversion, Plaintiff and the Cobb Classes have been deprived of the use and possession of their vehicles and damaged in an amount to be determined at trial.

## JURY DEMAND

151.   Plaintiff is entitled to and hereby demands a trial by jury. *See* U.S. Const. amend. VII; Fed. R. Civ. P. 38.

**WHEREFORE**, Plaintiff Barbara L. Bjornson demands a trial by jury and prays for judgment against Defendants Bank of America, N.A., Patrick K. Willis Company, Inc. *d/b/a* American Recovery Service, and AWR Enterprises Inc. as follows:

1.   Awarding judgment against Defendants in an amount to be determined at trial;

2.   Certifying the Cobb Class, American Recovery Class, AWR Class, and FDCPA Class as described herein;

3.   Awarding Plaintiff actual damages, statutory damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1692k(a)(1)–(3) against American Recovery and AWR;

4.   Awarding the FDCPA Class actual damages, statutory damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1692k(a)(1)–(3) against American Recovery and AWR;

5. Awarding Plaintiff actual damages and statutory damages under Minn. Stat. § 336.9-625 against Defendants;

6. Awarding the Cobb Classes actual damages and statutory damages under Minn. Stat. § 336.9-625 against Defendants;

7. Awarding Plaintiff damages against Defendants caused by Defendants' conversion of Plaintiff's property;

8. Awarding the Cobb Classes damages against Defendants caused by Defendants' conversion of such class members' property;

9. Awarding Plaintiff, the Cobb Class, American Recovery Class, AWR Class, and FDCPA Class any costs, litigation expenses, disbursements, and allowable attorneys' fees; and

10. Awarding Plaintiff, the Cobb Class, American Recovery Class, AWR Class, and FDCPA Class such other and further relief as the Court deems proper, just, and equitable.

**TARSHISH CODY, PLC**

Dated:  February 12, 2021          By:    *s/ Adam R. Strauss*
                                   Adam R. Strauss (#0390942)
                                   ars@attorneysinmn.com
                                   Benjamin W. Tarshish (#0392691)
                                   btarshish@attorneysinmn.com
                                   6337 Penn Avenue South
                                   Minneapolis, Minnesota 55423
                                   Telephone: (952) 361-5556
                                   Facsimile: (952) 361-5559

                                   ***ATTORNEYS FOR PLAINTIFF***

## VERIFICATION OF CLASS ACTION COMPLAINT AND CERTIFICATION

Pursuant to 28 U.S.C. § 1746, Plaintiff Barbara L. Bjornson verifies, certifies, and declares under penalty of perjury, as follows:

1.   I am a Plaintiff in this civil proceeding.
2.   I have read the above-entitled Class Action Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3.   I believe that this Class Action Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4.   I believe that this Class Action Complaint is not interposed for any improper purpose, such as to harass any Defendants, cause unnecessary delay to any Defendant, or create a needless increase in the cost of litigation to any Defendant, named in the Class Action Complaint.
5.   I have filed this Class Action Complaint in good faith and solely for the purposes set forth in it.
6.   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**EXECUTED ON**  _____ 02 _____  _ 12 _ , _ 2021 _
                   **Month**        **Day**      **Year**


_Barbara L. Bjornson_
**Barbara L. Bjornson**

26